IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CHAD S.T.,[1]<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIV. NO. 25-00547 JMS-KJM<br><br>ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION FINDING NO DISABILITY |

**ORDER AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION FINDING NO DISABILITY**

## I. INTRODUCTION

Chad S.T. ("Claimant"), proceeding pro se,[2] seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf [https://perma.cc/YLJ9-LBRF].

[2] Claimant was represented by counsel in the underlying administrative proceedings but he now proceeds pro se. *See* Administrative Record ("AR") 1 (Appeals Council's decision to extend the deadline to file a civil action addressed to Claimant's then-counsel); AR 41 (July 29, 2025 administrative hearing indicating "attorney for Claimant"). Accordingly, the court liberally construes the complaint and resolves all doubts in Claimant's favor. *See Hebbe v. Pliler*, 627

(continued . . . )

Security ("Commissioner" or "Defendant"). ECF No. 1. The Commissioner adopted the Administrative Law Judge's ("ALJ") August 6, 2025 written decision finding Claimant not disabled under § 216(i) and § 223(d) of the Social Security Act. The complaint asserts that the ALJ's decision is not supported by substantial evidence, is based on legal error, and requests "reversal or remand." ECF No. 12 at PageID.1375. For reasons that follow, the ALJ's decision is AFFIRMED.

## II. BACKGROUND

### A. The Social Security Disability Determination Framework and the ALJ's Findings and Decision

On April 14, 2023, then-51-year-old Claimant applied for Title II Social Security Disability Insurance benefits, alleging that his disability began on April 1, 2022. AR 213–219.[3] The Social Security Administration ("SSA") initially denied his claim for Social Security Disability Benefits on June 25, 2024, AR 91–95, and affirmed the denial on reconsideration on October 10, 2024, AR 101–104. Claimant is insured through March 31, 2027; he thus "must establish disability on or before this date to be entitled to a period of disability and disability insurance benefits." AR 22–23.

---

F.3d 338, 342 (9th Cir. 2010); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (explaining that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (per curiam).

[3] The AR is numbered sequentially, located in the lower-right corner of each page of the AR, from pages 1 to 1357 and is available at ECF No. 9-1.

The SSA has established a five-step sequential analysis to assess disability,[4] which asks:

> (1) Has claimant been engaged in substantial gainful activity? If so, he is not disabled. If not, proceed to step two.
>
> (2) Has claimant's alleged impairment been sufficiently severe to limit his ability to work? If not, he is not disabled. If so, proceed to step three.
>
> (3) Does claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, he is disabled. If not, proceed to step four.
>
> (4) Does claimant possess the residual functional capacity ("RFC")[5] to perform his past relevant work? If so, he is not disabled. If not, proceed to step five.
>
> (5) Does claimant's RFC, when considered with his age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, he is not disabled. If not, he is disabled.

---

[4] A claimant is "disabled" for purposes of the Social Security Act if (a) he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders him incapable of performing the work that he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[5] "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity [('RFC')]." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citing 20 C.F.R. § 416.920(e)). A claimant's RFC is "the most [Claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

*See, e.g.*, *Stout v. Comm'r, Soc. Sec. Admin*., 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. § 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled)); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations did not alter the familiar "five-step sequential evaluation process"). For steps one through four, the burden of proof is on the claimant, and if the claimant reaches step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since April 1, 2022, the alleged onset date of disability. AR 24.

At step two, the ALJ found that Claimant had the following severe impairments: "posttraumatic stress disorder (PTSD); unspecified depressive disorder; unspecified anxiety disorder; chronic low back pain; and bilateral flat feet and plantar fasciitis."[6] AR 25.

At step three, the ALJ found that Claimant's physical or mental impairments (or a combination thereof) did not satisfy criteria that defined any per

[6] The ALJ found Claimant's medically determinable impairments of right elbow strain (treated with "physical therapy, taping, and education") and obstructive sleep apnea ("managed with CPAP therapy") to be "nonsevere." AR 25.

se disabling impairment(s) under 20 C.F.R. § Pt. 404, Subpart P, Appendix 1.

AR 25.

Between steps three and four, the ALJ assessed Claimant's RFC and found that during the relevant period, Claimant could perform medium work[7] with the following limitations:

> [N]ever climb ladders, ropes, or scaffolds; occasionally climb ramp and stairs, stoop, kneel, crouch, and crawl; understand and remember detailed, but not complex instructions; occasional interactions with supervisors and co-workers; no public contact; cannot perform work at a production rate pace, meaning no assembly line work or work with hourly production quotas; and deal with occasional changes in a routine work setting.

AR 27.

At step four, the ALJ determined that Claimant had no past relevant work.[8] AR 32.

At step five, the ALJ found—given Claimant's age, education, work experience, and RFC—that there were jobs that existed in significant numbers in

[7] A job in the "[m]edium work" category involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[8] Until March 2020, Claimant had operated a food truck and provided marketing consulting services. The SSA does not consider work performed more than five years before the time it decides whether a claimant is disabled or when the disability insured status requirement was last met, whichever is earlier. 20 C.F.R. § 404.1565(a). Accordingly, the ALJ determined at the July 29, 2025 administrative hearing—over five years after Claimant stopped working—that there was no applicable past relevant work (under the regulations). *See* AR 48–49.

the national economy that he could perform: night cleaner; lab cleaner; and linen room attendant. AR 33 (citing 20 C.F.R. §§ 404.1569, 404.1569a). The ALJ also found that if Claimant was limited to light work,[9] he could perform as a router, marking clerk, or routing clerk. AR 33–34. Accordingly, the ALJ found Claimant not disabled as of April 1, 2022, to the date of the ALJ's decision. AR 34.

**B. Procedural Background**

On August 6, 2025, the ALJ issued his decision of no disability. *Id.* This decision became final when the Appeals Council denied Claimant's request for review on August 27, 2025. AR 6–10. Claimant brought this action for judicial review on December 20, 2025. ECF No. 1.

Claimant filed his Opening Brief and Concise Statement of Facts on April 13, 2026. ECF Nos. 12, 13. The Commissioner filed an Answering Brief and Concise Statement of Facts on May 14, 2026. ECF Nos. 14, 15. Claimant filed a Reply Brief on June 2, 2026, ECF No. 16, but no Reply to the Commissioner's Opposing Concise Statement of Facts. The court reviews the Commissioner's final decision without a hearing under Local Rule 7.1(c).

---

[9] SSA regulations provide that someone who can do medium work can also do light work. *See* 20 C.F.R. § 404.1567(c). A job in the "light work" category "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time[,] some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

## III. STANDARD OF REVIEW

Congress has provided a limited scope for judicial review of the Commissioner's decision to deny benefits under the Social Security Act. *See* 42 U.S.C. § 405(g); *see also, e.g.*, *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress 'places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.'" (citation omitted)).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). First, courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts will "disturb the Commissioner's decision to deny benefits 'only if [the ALJ's findings are] not supported by substantial evidence or [are] based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (internal quotation marks and citation omitted).

To determine whether there is substantial evidence, courts "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quotation marks and citation omitted). If the record, considered as a whole, can reasonably support *either* affirming or reversing the ALJ's decision, the decision must be affirmed, *id*. at 1010 (citations omitted), because the court "may not substitute its judgment for that of the ALJ," *Matney ex rel. Matney*, 981 F.2d at 1019. "Nevertheless, a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Gutierrez*, 740 F.3d at 523 (citations omitted).

And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. An error is harmless if it is "inconsequential to the ultimate nondisability determination" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id*. (quoting *Treichler*, 775 F.3d at 1099). The party appealing the ALJ's decision generally

bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

Nevertheless, "[a] clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Brown-Hunter*, 806 F.3d at 492 (citation omitted). Consequently, "a reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id*. (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ").

The court is instead constrained to review the reasons the ALJ asserts, *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because, for example, "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] [its] conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions,'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103) (some brackets in original). Thus, because the court "cannot engage in such substitution or speculation, such error will usually not be harmless." *Id*.

# IV. DISCUSSION

Claimant argues the following: (1) "The ALJ Failed to Properly Evaluate [His] Limitations";[10] (2) "The ALJ Improperly Rejected [His] Testimony"; (3) "The RFC Is Not Supported by Substantial Evidence"; (4) "The ALJ Improperly Relied on Daily Activities"; and (5) "The Step Five Determination Is Not Supported." *See generally* ECF No. 12 at PageID.1374–75. Distilling these issues, the court addresses the ALJ's credibility determination and the RFC. In so doing, the court finds that the ALJ's decision is supported by substantial evidence.

## A. Claimant's Testimony

At the administrative hearing, Claimant testified that he lived in a house with his adult daughter and a small dog. AR 49–50. Claimant testified to having physical impairments: a right elbow condition that resolved within a year but is recurrent, AR 49; back and neck pain managed with chiropractic treatment, AR 50; and pain from either flat feet or his back, which "sometimes" acts up if he stands for longer than 20 minutes and is alleviated by sitting for about 20 minutes.

---

[10] The United States Department of Veterans Affairs ("VA") assigned Claimant a 100% service connected disability rating for his anxiety disorder. *See, e.g.*, AR 578, 905, 1223. "A disability rating affects [a veteran's] monthly compensation and eligibility for other VA benefits." 100% VA Disability Rating: Types of Ratings, Pay Rates, and Available Benefits, *Veteran's Guide*, https://veteransguide.org/va-ratings/100-percent/#1 [https://perma.cc/WH8J-4E4T]. Claimant argues that "[t]he ALJ did not adequately consider that finding." ECF No. 12 at PageID.1374. But because "[d]ecisions by other governmental agencies," including the VA, are "inherently neither valuable nor persuasive," an ALJ need not include analysis of those decisions. *See Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (finding no error for ALJ to exclude claimant's VA disability rating from her analysis because 2017 regulations removed any requirement to discuss another agency's rating) (citing 20 C.F.R. §§ 404.1520b(c), 404.1504).

He also testified that "if [he has] to do something . . . [he will] force [himself] to do it but then the next day it hurts more." AR 50–51.

As for his mental health, Claimant testified to having difficulty being around people and that sleeping only a few hours a night coupled with anxiety causes him to be "very hostile sometimes." AR 51. This hostility has caused "several incidents that made [him] feel like . . . [he] shouldn't be around people too much" because he does not "want to get [himself] in trouble[,]" and "[m]any times" he has "started a physical altercation with someone." AR 51–52; *see also* AR 293 ("I have high level anxiety, do not sleep at night. It is also difficult for me to work with other people because of my anxiety."); AR 298 ("Anxiety has made it more difficult to get along with others . . . . I have a short fuse and can get very angry very quickly."); AR 294 ("Anxiety makes it difficult to fall asleep because of racing thoughts, sleep apnea"); AR 300 ("[S]leep apnea makes it hard to stay asleep.").

Claimant stated that he does not "leave the house a lot of times because of [anxiety]," although if he has appointments he will "force [himself] to go" but he does not like it. AR 53. Claimant described having an anxiety attack as "tens[ing] up and . . . [having] a hard time breathing or hard time moving and breathing [,]" and not feeling back to normal for one to two hours. *Id.* These attacks occur about five times a week. AR 54. And if Claimant has an anxiety

attack while out of the house and he is "put in a situation where [he's] dealing with people, it could turn into anger or some kind of outburst." *Id*. Claimant takes medication for anxiety, but they are "kind of strong" and make him "a little drowsy . . . to drive." AR 52. The lack of sleep also causes Claimant to nap "[a]ll the time" during the day because [he's] exhausted." AR 53. Claimant testified that his anxiety symptoms—along with medications and not sleeping—cause him to "stay in bed" up to 80% of the day" because getting out of bed is "[p]robably one of the hardest things." AR 55. Claimant also reported that his anxiety "impacts [his] memory and ability to understand [and] complete tasks." AR 298.

Claimant attested in his function report or testified as to the following daily activities:

- He plays with his dog daily with no issues, AR 297, and sometimes feeds and occasionally walks the dog, AR 294.
- He can walk one mile before needing to stop, and resume after five minutes of rest. AR 298.
- He prepares his own meals "50% of the time, every other day[,]" which takes about ten minutes. AR 295.
- He can "help clean around the house" about twice a month for 30 minutes. His daughter helps him clean, and he hires help for yard work. *Id*.
- He goes outside alone daily and can drive or ride in a car. AR 296.

- He shops for groceries in stores and online three or four times a week, which takes about 30 minutes. *Id.*

- He has no problem with personal care, AR 294, but he "sometimes forget[s] to do things" and "sometimes" his daughter "needs to remind" him to take medication. AR 295. He has also left the gate open, *id.*, and has left food on the stove to burn and "smoked out the house." AR 55.

- He handles checking and savings accounts and pays bills. *Id.*

- He spends time with others in person or texting people and socializes "much more rarely." *Id.*

## B. Analysis

### *1. The ALJ's Credibility Determination*

"When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can 'reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). "[A]n ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Id.* at 494–95 (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)). Furthermore, "[a] finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony

regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (citation and internal quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony"); *cf. Johns v. Berryhill*, 2019 WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and remanding Commissioner's decision because ALJ failed to properly "specifically identify" and discuss Plaintiff's pain and symptom testimony in rejecting her testimony and finding her not disabled). But here, the ALJ supported his findings with specific, clear and convincing reasons.

At the first step of the two-step credibility framework, the ALJ found Claimant's medically determinable impairments could reasonably be expected to cause his alleged symptoms. But at the second step the ALJ found Claimant's statements about the intensity, persistence and limiting effects of these symptoms "not entirely consistent with the medical evidence and other evidence in the

record." AR 28; *see also* 20 C.F.R. § 404.1529; Social Security Ruling ("SSR")[11] 16-3p (evaluation of symptoms in disability claims).

In his summary of Claimant's conditions, the ALJ acknowledged Claimant's testimonial and written allegations on the conditions that affect his ability to work:

> Physically, [Claimant] reported chronic pain in his back, neck, and feet, for which he receives chiropractic treatment and uses foot inserts, though he stated these interventions have provided minimal relief.
>
> He described pain and discomfort after standing for approximately 15 to 20 minutes, requiring him to sit for about 20 minutes to alleviate symptoms, and noted that prolonged activity exacerbates his pain the following day. He also mentioned a history of right elbow problems that have intermittently recurred. The claimant lives in a house with his adult daughter and cares for a small dog, which he is able to pick up without difficulty.
>
> Regarding his mental health, [Claimant] described significant anxiety, sleep disturbance, averaging only two to four hours of sleep per night, and frequent exhaustion requiring daytime naps. He reported frequent anxiety attack[sic], occurring four to five times per week, characterized by tension, racing thoughts, and difficulty breathing, sometimes lasting up to two hours.
>
> He also described irritability, hostility, and difficulty interacting with others, including incidents of physical

[11] "SSRs 'do not carry the force of law, but they are binding on ALJs nonetheless. They reflect the official interpretation of [the SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.' *Glanden v. Kijakazi*, 86 F.4th 838, 843 n.4 (9th Cir. 2023) (quoting *Diedrich v. Berryhill*, 874 F.3d 634, 838 (9th Cir. 2017)).

> altercations and outbursts, which have negatively impacted his relationships and ability to work.
>
> The claimant stated that his medications cause drowsiness and difficulty concentrating, and he has fallen asleep while driving. He reported difficulty leaving the house due to anxiety, sometimes staying in bed all day, and problems with task completion, such as leaving cooking unattended.
>
> He acknowledged that his mental health symptoms, including anxiety and possible PTSD, significantly limit his ability to interact with others, maintain concentration and persistence, and perform daily activities.

AR 28; *see also* AR 49–55 (hearing transcript), 293–300 (Claimant's function report).

The court finds that the ALJ conducted a proper credibility determination and offered specific, clear and convincing reasons, based on substantial evidence, for rejecting Claimant's testimony. In reviewing the ALJ's findings, the court first addresses Claimant's physical conditions, then his mental conditions.

*a. Physical impairments*

The ALJ summarized Claimant's lower back pain condition as follows:

- Claimant "has consistently reported episodic low back pain, which is aggravated by activity and alleviated by chiropractic therapy, massage, pain medication, and rest." AR 28 (citing AR 1288–1357 (January 2022–May 2025 chiropractic notes documenting "some improvement"; "needing less . . .

medications"; "decreasing pain"; "improved function"; "increased [range of motion ('ROM')], treatment is providing good relief, but may require further treatment")).

- "In December 2023, chiropractic records documented a positive active leg raise on the right and decreased lumbar range of motion at 45 degrees flexion and 15 degrees extension, with manipulation performed." *Id*. (citing AR 734–35 (December 15, 2023 chiropractic notes indicating low back pain pain "level: 7," "Flexion ROM is 45/60. . . . Extension ROM is 15/25")).

- "Office visits in April and November 2023 noted ongoing back pain managed with chiropractic care and gabapentin, but physical exams showed normal gait, no motor or sensory deficits, and no edema." *Id*. (citing AR 962–63 (November 3, 2023 chiropractic note), AR 937 (April 19, 2024 chiropractic note),[12] AR 1012 (April 19, 2023 chiropractic note)).

- "In June 2024, chiropractic evaluation found intermittent lower back and shoulder pain, with objective[13] findings of tenderness, asymmetry, and hypertonicity[14] in the lumbar and

[12] The reference to an April 19, 2024 chiropractic note appears inadvertent. That note does not state "physical exams showed normal gait, no motor or sensory deficits, and no edema." *See* AR 937. Instead, it states that Claimant "is doing fine . . . [n]otice[d] pain in Left [sic] elbow for the past 2 months, [and he can] pick-up [sic] [a] box of pineapple [with] about five in the box." He does lifting every other day and that is for his work. Notice dull aching pain but certain movement[s] bring on sharp pain. He gets message [sic] therapy that help[s] [a] little bit." *Id*.

[13] Objective medical evidence consists of "medical signs or laboratory findings." SSR 16-3p. "Signs are anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. (footnote omitted). "Laboratory findings are anatomical, physiological, or psychological phenomena, which can be shown by the use of medically acceptable laboratory diagnostic techniques." *Id*. (footnote omitted).

[14] More simply known as muscle stiffness, "[h]ypertonia presents as an increase in both resting and exercise muscle tone, decreased range of movement, and rigidity." Muscle Hypertonia, SCIENCEDIRECT, https://www.sciencedirect.com/topics/medicine-and-dentistry/muscle-hypertonia (last visited Nov. 19, 2026).

sacral regions." AR 28–29 (citing AR 1337 (June 10, 2024 chiropractic note)).

- "From May 2023 to May 2025, follow up visits consistently documented low back pain, with improvement reported with therapy and rest." AR 29 (citing AR 1288–1357) (January 2022–May 2025 chiropractic notes documenting same)).

The ALJ also reviewed Claimant's "long-standing history of bilateral flat feet and plantar fasciitis, with symptoms reportedly present for over 20 years and worsening over time[,]" *id.*:

- Claimant "described sharp, aching pain rated up to 8/10, exacerbated by ambulation, prolonged standing, and running, and only partially relieved by rest." *Id.* (citing AR 761 (April 28, 2021 medical note)).

- "In April 2021, . . . [o]bjective findings included moderate arch collapse, valgus position of the calcaneus, pronation, and pain with palpation, but normal strength, sensation, and reflexes in the lower extremities." *Id.* (citing AR 762–63). "Treatment included stretching, NSAIDs, orthotics, supportive shoes, and cross-training recommendations." *Id.* (citing same).

- "In March 2022, [Claimant] presented with swelling and pain in the right medial foot, with swelling at the base of the first digit." *Id.* (citing AR 1036). "By November 2023, flat feet were noted as mild, and he was referred to podiatry." *Id.* (citing AR 963).

- "Multiple physical exams throughout the record, including in May 2022 and April 2023, documented normal gait, no focal neurological deficits, and no significant edema." *Id.* (citing AR 848 (May 22, 2022 medical note), 1012 (April 19, 2023 medical note)).

- Claimant "also reported engaging in weight lifting and other physical activities at home, though he stated he was working

> less due to stress and pain." *Id*. (citing AR 1069 (April 28, 2023 medical note)).

The ALJ found that Claimant's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent with this evidence, given the "generally conservative and effective treatment" he received:

> [Claimant's] chronic low back pain and foot conditions have been managed with chiropractic therapy, massage, pain medication, orthotics, and supportive footwear, with multiple records noting improvement in symptoms with therapy and rest. Physical examinations throughout the record frequently documented normal gait, no motor or sensory deficits, and no significant edema . . . . [W]hile the claimant has a long-standing history of bilateral flat feet and plantar fasciitis, objective findings have included normal strength, sensation, and reflexes in the lower extremities, and his condition has been managed with conservative measures such as stretching, NSAIDs, and orthotics.

AR 30. A claimant's relatively conservative treatment is a proper consideration in an ALJ's credibility determination. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms), *superseded by statute on other grounds*. In addition, the ALJ's reference to "multiple records noting improvement in symptoms with therapy and rest[,]" AR 30, includes:

- December 15, 2023 chiropractic session documenting "[t]ightness/tautness[,]" AR 735, and comment by Claimant that even though "[t]he symptoms are happening frequently, . . . [c]hiropractic therapy, massage therapy, pain medicines and sleep/rest make the symptoms better[,]" AR 734.

- November 3, 2023 note indicating chiropractic care for back pain and "no motor/sensory deficits in upper extremity or lower extremity" with normal gait and balance. AR 962.

- April 19, 2024 primary care outpatient note reporting that Claimant "is doing fine. Notice[d] pain in Left [sic] elbow for the past 2 months, [and he can] pick-up [sic] [a] box of pineapple [with] about five in the box." He does lifting every other day and that is for his work. Notice dull aching pain but certain movement[s] bring on sharp pain. He gets message [sic] therapy that help[s] [a] little bit." AR 937.

- April 19, 2023 primary care outpatient note indicating "trace edema in lower extremity [bilateral]. Muscle tone is normal . . . no motor/sensory deficits in upper extremity or lower extremity. Gait/balance is normal." AR 1012.

- May 2023 to May 2025 chiropractic notes generally indicating "some improvement," need for less medications, decreasing pain, improved function and increased ROM. AR 1288–1357.

These specific, clear and convincing examples contradict Claimant's allegations that pain from either his back or flat feet occurs if he stands longer than 20 minutes and is alleviated by sitting for about 20 minutes. *See* AR 51; *see also Tommasetti*, 533 F.3d at 1039. Claimant, in turn, contradicts his own testimony by alleging that he can walk one mile before needing to stop and resume after five minutes of rest. AR 298. And while "the ALJ does not need to discuss every piece of evidence in the record," *Howard ex re. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation and quotation marks omitted), *superseded by statute on other grounds*, this record, viewed as a whole, shows that conservative treatment

has helped Claimant manage his physical symptoms and suggests that he is more physically capable than he alleges:

- Between 2018–2019—Claimant "felt better after his treatment." AR 779–80, 793–94, 795–96, 806–07.

- Mid-2020—Claimant's lower back pain was "slowly improving and getting better." AR 363, 774–75, 776–77.

- 2022 and 2023—Chiropractic, massage therapy, pain medication (such as diclofenac,[15] AR 859), and sleep and rest made Claimant's symptoms better. AR 737, 746, 750, 755.

- June 2023—Claimant's lower back pain condition was "progressing slow" with "progress . . . noted as evidence by decreasing pain." AR 1311.

- July 2023—Follow-up visit note assessing "decreasing pain . . . improved function . . . [and] increased [range of motion]." AR 1315.

- June 2024—Claimant "need[ed] less utilization of medications" and he experienced "decreasing pain . . . [and] improved function," with "treatment . . . providing good relief, but may require further treatment." AR 1338.

- In February 2025, Claimant reported that he controls his lower back pain most of the time with physical therapy and exercise. AR 1195.

[15] "Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild-to-moderate pain, and helps to relieve symptoms of arthritis ([e.g.], osteoarthritis or rheumatoid arthritis), such as inflammation, swelling, stiffness, and joint pain." Diclofenac (oral route), MAYO CLINIC, https://www.mayoclinic.org/drugs-supplements/diclofenac-oral-route/description/drg-20069748 (last visited Nov. 19, 2026).

The ALJ also cited Claimant's activities as specific, clear and convincing reasons to discredit his allegations. That is, Claimant's ability to "perform all personal hygiene tasks, drive, shop at local stores, prepare simple meals, manage his medications, request prescription refills, and make his own medical appointments . . . manage[]his finances with some assistance from his daughter, help[] with light household chores when able, and care[] for a dog" are inconsistent with the physical limitations he alleges. AR 30.

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). And "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Id.* (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded by statute on other grounds*). Thus, "daily activities may be found to bear on the credibility of a claimant's testimony only if (1) the activities actually contradict the claimant's symptom testimony, or (2) they show that the claimant spends a substantial part of their day engaged in pursuits that are transferable to a work setting." *Auapaau v. O'Malley*, 2024 WL 4301378, at *3 (D. Haw. Sept. 26, 2024) (citing *Orn*, 495 F.3d at 639).

Here, the ALJ's reference to Claimant's activities is bolstered by substantial evidence in the record that is inconsistent with his alleged physical limitations:

- August 2023—Claimant exercises "via walking [the] dog," his energy level allows "weightlifting and hitting [a] punching bag at home," and he has his "own company but [is] working less due to [his symptoms]." AR 976.

- November 2023—Claimant walks his dog in the morning for exercise, and he works two to three times per week to "get groceries," albeit without "much interpersonal interaction." AR 559, 954.

- April 2024—Claimant "[n]otice[d] pain in Left [sic] elbow for the past 2 months, [and he can] pick-up [sic] [a] box of pineapple [with] about five in the box." AR 937, 1229.

- July 2024—Claimant mentioned that his second daughter "help[s] him work[] on the food truck." AR 919.

- November 2024—Claimant reported to his physical therapist, "without apparent signs of acute distress[,]" that he "works in the food business part time to assist getting groceries when needed[,]" and that he "is having trouble lifting things above 10 lbs from the ground." AR 1100.

- December 2024—Claimant "went to Europe so his back was sore on the plane ride[]." AR 1106.

- February 2025—Claimant reported that he "likes to do weightlifting and boxing however he has to keep the weights light due to [the] increase in pain." AR 1110.

In reviewing the ALJ's determination, the court "must consider the entire

record as a whole." *Garrison*, 759 F.3d at 1009 (citation omitted). Where "the evidence can reasonably support either affirming or reversing [the ALJ's] decision," the court must affirm and cannot "substitute [its] judgment for that of the [ALJ]." *Id.* at 1010 (citation omitted) (final set of brackets in original); *see also Matney ex rel. Matney*, 981 F.2d at 1019. In this case, substantial evidence supports the ALJ's adverse credibility determination as to Claimant's physical capabilities.

*b. Mental Impairments*

As for Claimant's mental impairments, the ALJ acknowledged Claimant's "history of PTSD, depressive disorder, and anxiety disorder, with regular behavioral health treatment at the [Veteran's Administration ('VA')], including counseling and psychiatric medication management." AR 29 (citing AR 904–1083 (2021–2024 medical records), 1235–87 (2025 medical records)). And the ALJ found that "[o]verall, while the claimant continues to report anxiety and mood symptoms, objective findings on mental status exams have generally been unremarkable, with no significant cognitive or behavioral abnormalities observed" and "no evidence of psychosis, mania, or significant cognitive impairment." AR 30. In particular, the ALJ noted that

> [Claimant] has engaged in regular counseling and psychiatric medication management, and while he continues to report anxiety, irritability, and mood symptoms, mental status examinations from September

> 2024 through May 2025 have consistently shown him to be alert and oriented, with linear and goal-directed thought processes, good judgment and insight, and no significant cognitive or behavioral abnormalities. He has denied hallucinations and suicidal or homicidal intent, and has been cooperative in sessions. The overall course of treatment has been routine and conservative.

*Id.*

The Commissioner similarly characterized Claimant's mental health treatment as "routine and conservative." ECF No. 14 at PageID.1380 (citation omitted). According to the Mayo Clinic, "[t]he two main treatments for anxiety disorders are psychotherapy and medications[,]" and an individual "may benefit most from a combination of the two." Anxiety disorders—Diagnosis & Treatment, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/anxiety/diagnosis-treatment/drc-20350967 (last visited Nov. 19, 2026). Furthermore, "psychotherapy and counseling are customary and generally accepted treatments for anxiety and depression regardless of severity, not 'conservative' treatments reserved only for mild cases. . . . Even some of the more aggressive treatments, like partial hospitalization, rely in part on psychotherapy to produce results." *Lanh H. v. Kijakazi*, 2024 WL 4133805, at *9 (N.D. Cal. Sept. 9, 2024) (citing *id.*). Regardless of their characterization, these generally accepted treatment modalities have helped Claimant.

In addition to Claimant receiving conservative treatment, the

following instances in the record are noted generally by the ALJ as inconsistent with the alleged limiting effects of Claimant's mental impairment:

- July 11, 2023—Referenced a May 30, 2023 increase in fluoxetine dosage to 20 mg and Claimant reported feeling "more stable . . . a little better, and less anger." AR 979.

- September 19, 2023—Claimant reported "better" mood, "improved" anxiety with "no panic attacks[,]" concentration "a little better" and feeling "better—not angry or thinking too much." AR 968.

- February 5, 2024—"[Claimant] states . . . the 'Buspirone helped my anxiety . . . without it I probably would have done something[.]" AR 944.

- April 26, 2024—Claimant reports that he is "doing okay." AR 932.

And although Claimant "does not enjoy" therapy, he "plans to continue." AR 950. Counseling and medication have helped to mitigate Claimant's angry outbursts and avoid physical altercations, suggesting that his mental impairments are not disabling as he alleged. "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [Supplemental Security Income] benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ provided specific, clear and convincing reasons to discredit Claimant's mental symptom testimony.

The only consultative mental status exam in the record cited by the ALJ (by Michael D. Rabara, Psy.D.) contains a diagnosis of "unspecified mood disorder with anxious distress and unspecified trauma and other stressor related disorder." AR 861. But this exam report does not comment on Claimant's ability to work or manage in a workplace. It only states that Claimant is "capable of managing benefit payments in his best interests." *Id.* (capitalization altered). In fact, Dr. Rabara's opinion supports Claimant's efforts to improve his mental condition: "[Claimant] seems tense, irritable, and sensitive, but his children continue to motivate him, and he seems to be working hard to manage his emotions and behavior with VA support." *Id.*

As addressed next, the ALJ's evaluation of the objective medical evidence and Claimant's symptom testimony resulted in an RFC based on substantial evidence.

***2. RFC***

Claimant argues that the RFC is not supported by substantial evidence. He reiterated that he can "stand only about 15 to 20 minutes before needing to sit, suffers panic attacks four to five times per week, and sleeps only two to four hours per night." ECF No. 12 at PageID.1375 (citing AR 16). Claimant also "reported that his medications cause drowsiness and difficulty concentrating. *Id.* (citing 20 C.F.R. § 404.1529(c)(3)(iv) (providing that the SSA

considers the "type, dosage, effectiveness, and side effects of any medication [a claimant currently] take[s] or ha[s] taken to alleviate . . . pain or other symptoms")). Claimant also stated that he "uses a CPAP machine for obstructive sleep apnea." *Id*. (citing AR 13). These arguments do not withstand the ALJ's specific, clear and convincing reasons underlying the RFC.

The ALJ's imposed limitations were tailored to Claimant's physical impairments and it provided for jobs in the medium and light work categories. The ALJ explained:

> As an accommodation for the claimant's alleged symptoms and functional limitations related to his physical impairments, he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramp and stairs, stoop, kneel, crouch, and crawl. These limitations are recommended to prevent exacerbation of symptoms and potential risk of injury.

AR 31. Furthermore, to account for Claimant's mental impairments,[16] the RFC limited him from "perform[ing] work at a production rate pace, [i.e.,] no assembly line work or work with hourly production quotas[,]" although Claimant must "deal

---

[16] Claimant alleged that he has "quit jobs and closed companies that [he] ran because of difficulties getting along" with others, AR 298, and does not handle stress or changes in routine well, AR 299. He has also alleged that his mental condition affects his memory, ability to complete tasks, concentration, understanding, following instructions, and ability to get along with others, AR 298.

with occasional changes in a routine work setting."[17] AR 31. The RFC also imposed only "occasional interactions with supervisors and co-workers" and "no public contact." *Id.* The court agrees that this RFC "reflects the degree of limitation the [ALJ] . . . found in [Claimant's] mental function analysis."[18] *Id.*

* * *

The ALJ justifiably discredited Claimant's symptom testimony given the inconsistencies with the objective medical evidence, and the evidence of Claimant's activities, and his management of his physical and mental conditions through conventional treatment. Accordingly, the ALJ assessed an appropriate RFC in both the medium and light work categories, supported by substantial evidence. The court therefore affirms.

---

[17] Michael D. Rabara, Psy.D., assessed Claimant's performance on neuropsychological screening as "far lower than expected for [Claimant's] educational level and likely reflects concentration difficulty secondary to his emotional distress." AR 860. The ALJ accounted for this in assessing the RFC with the limitations on complex instructions or fulfilling work quotas. *See* AR 27.

[18] Under 20 C.F.R. Part 404, Appendix 1—Part-A2 to Subpart P of Part 404, to satisfy the "paragraph B" criteria, mental impairments must result in one extreme limitation or two marked limitations. The scale of limitations consists of: no limitation; mild; moderate; marked; or extreme. *Id.* The ALJ assessed Claimant's "paragraph B" criteria as moderate limitations in all of the following broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. The RFC reflects the ALJ's consideration of Claimant's "paragraph B" criteria and is supported by substantial evidence.

## V. CONCLUSION

For the foregoing reasons, the court AFFIRMS the ALJ's Decision. The Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 19, 2026.

/s/ J. Michael Seabright

J. Michael Seabright
United States District Judge